Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| NÉLIDA BURGOS ORTIZ<br><br>Recurrente<br><br>v.<br><br>OFICINA DE GERENCIA DE PERMISOS (OGPE)<br><br>Recurrida<br><br>v.<br><br>MINISTERIO SEÑAL DE VIDA, INC. P/C ANA I. LÓPEZ TORRES<br><br>Recurrida | TA2025RA00288 | *REVISIÓN* procedente de la Oficina de Gerencia de Permisos<br><br>Caso Núm.: 2021-408994-PU-317369<br><br>Sobre: Resolución sobre Permiso de Uso |

Panel integrado por su presidenta, la Jueza Martínez Cordero, el Juez Cruz Hiraldo y el Juez Pérez Ocasio.[1]

*Martínez Cordero, jueza ponente*

### SENTENCIA

En San Juan, Puerto Rico, a 14 de noviembre de 2025.

Comparece Nélida Burgos Ortiz (señora Burgos Ortiz o recurrente) mediante un *Recurso de Revisión Judicial*, para solicitarnos la revisión de la *Resolución* emitida el 26 de diciembre de 2024,[2] y notificada el 14 de agosto de 2025,[3] por la Oficina de Gerencia de Permisos (en adelante, OGPe). Mediante la *Resolución* recurrida, la OGPe concedió un Permiso Único para la operación de una Institución Educativa en una pertenencia ubicada en el Municipio de Orocovis. Recibida esta determinación, la recurrente interpuso una oportuna *Moción de Reconsideración* ante la División de Revisiones Administrativas,[4] la cual no fue acogida, mediante

---

[1] Mediante la OATA-2025-201 del 14 de octubre de 2025, se designó al Hon. Alberto L. Pérez Ocasio en sustitución del Hon. Abelardo Bermúdez Torres por este haber dejado de ejercer funciones como Juez del Tribunal de Apelaciones.
[2] Sistema Unificado de Manejo y Administración de Casos del Tribunal de Apelaciones (SUMAC TA), a la Entrada Núm. 11, Expediente Administrativo.
[3] *Íd.*
[4] *Íd.*

dictamen, emitido el 15 de septiembre de 2025.[5] Al día siguiente, el aludido dictamen fue enmendado *Nunc Pro Tunc.*[6] Dicha enmienda fue notificada el 17 de septiembre de 2025.[7]

Por los fundamentos que expondremos, se *confirma* la *Resolución* recurrida.

I

Esta es la *segunda* ocasión que este Tribunal recibe un recurso apelativo en el caso del título. En la *primera* ocasión, la recurrente compareció ante nos en el alfanumérico KLRA202500081, para solicitar la revisión de la *Resolución* emitida, el 26 de diciembre de 2024, por la OGPe. En el referido dictamen, la OGPe otorgó el permiso solicitado por la señora Ana I. López Torres (señora López Torres) para la operación de una Institución Educativa. Mediante *Sentencia*, emitida el 28 de abril de 2025, este Tribunal ordenó la desestimación del recurso apelativo, tras haberse presentado de forma prematura y ordenó a la OGPe a notificar la resolución recurrida a todas las partes, incluyendo a sus representantes legales.[8]

Dado a lo anteriormente expuesto, incorporamos por referencia la relación de hechos esbozada en la *Sentencia* emitida por este Tribunal de Apelaciones y nos circunscribiremos a resumir ciertos aspectos medulares y los suscitados luego de haberse dictado nuestra *Sentencia* del 28 de abril de 2025.

Establecido lo anterior, puntualizamos que el caso de marras inició cuando la señora López Torres presentó ante la OGPe una Solicitud de Enmienda de Permiso Único para añadir una escuela a una iglesia existente, en una pertenencia ubicada en un Distrito R-I (Residencial Intermedio).[9] Conviene mencionar que la iglesia que

---

[5] SUMAC TA, a la Entrada Núm. 11, Expediente Administrativo.
[6] *Íd.* La Resolución *Nunc Pro Tunc* fue para corregir el nombre de la recurrente.
[7] SUMAC TA, a la Entrada Núm. 11, Expediente Administrativo.
[8] Véase la *Sentencia* del alfanumérico KLRA202500081.
[9] SUMAC TA, a la Entrada Núm. 11, Expediente Administrativo.

opera en dicho lugar está bajo el nombre de Ministerio Señal de Vida, Inc. (Ministerio Señal de Vida).

Así las cosas, el 9 de abril de 2024, la OGPe le remitió una comunicación a la señora López Torres,[10] en la cual le indicó que, debido al tipo de solicitud, sería de aplicación la Sección 6.1.3.2 del Reglamento Conjunto para la Evaluación y Expedición de Permisos Relacionados al Desarrollo, Uso de Terrenos y Operación de Negocios (Reglamento Conjunto).[11] Por otro lado, le explicó que el uso solicitado no estaba permitido ministerialmente, por lo cual la petición pasaba a ser de carácter discrecional y era necesario que se evaluara por medio de una vista pública. Asimismo, le requirió que para que se pudiera considerar su solicitud, cumpliera con ciertos requisitos. Entre ellos: (i) la instalación de un rótulo, conforme a la Sección 2.1.9.12 del Reglamento Conjunto;[12] (ii) notificar a los colindantes de la propiedad en la cual se propuso la acción; (iii) cargar al sistema los acuse de recibo; (iv) presentar un memorial explicativo; (v) presentar endoso y/o comentarios del Municipio en relación con el uso solicitado; (vi) realizar un pago por la cantidad de $100.00 dólares, por concepto de variación de uso, y (vii) anejar la información solicitada en formato digital como parte de la subsanación del caso. Así, pues, se le advirtió que luego de que sometiera la totalidad de los documentos, antes señalados, se procedería a referir el caso a la División Legal, para llevar a cabo la correspondiente vista pública.

Cumplidos los mencionados requerimientos, la OGPe procedió a emitir un Aviso de Vista Pública, con el fin de discutir la enmienda al permiso único que nos ocupa.[13] La referida vista fue señalada para el 13 de noviembre de 2024.

---

[10] SUMAC TA, a la Entrada Núm. 11, Expediente Administrativo.
[11] Reglamento Núm. 9473 del 16 de junio de 2023.
[12] *Íd.*
[13] SUMAC TA, a la Entrada Núm. 11, Expediente Administrativo.

En el interín, el 12 de noviembre de 2024, el señor Elis Rivera Colón, propietario del restaurante Casa Jiba, remitió una comunicación a la OGPe, mediante la cual certificó que había permitido al Ministerio Señal de Vida, utilizar un predio de terreno de su propiedad para estacionamiento.[14] Indicó que, en ese espacio de terreno, se podían acomodar cerca de veinticinco (25) vehículos.

Celebrada la vista pública, mediante *Resolución*, emitida el 26 de diciembre de 2024,[15] la OGPe otorgó el Permiso Único a favor de la señora López Torres para la operación de la Institución Educativa. Posteriormente, el 14 de agosto de 2025, la referida *Resolución* fue notificada, a raíz de lo resuelto en el alfanumérico KLRA202500081.[16]

Como parte del dictamen emitido, la OGPe emitió las siguientes once (11) determinaciones de hechos:

1. El nombre de este proyecto es Ministerio Señal de Vida y ubica en la Carretera 155 Km. 31.5, Bloque H-1 del Barrio Orocovis del Municipio de Orocovis, Esta propiedad tiene número de catastro 219-017-077-01 y el predio está calificado Residencial Intermedio (R-I), según mapas de calificación vigente. El suelo está clasificado urbano y es Zona inundable X.

2. El uso propuesto es escuela en una estructura de hormigón y bloques de 75.0000 pies cuadrados, de una planta. La parcela donde ubica mide 616.88 metros cuadrados. Los predios colindantes en su mayoría son de uso residencial, aunque se observa también usos comerciales e institucionales en el área.

3. El dueño de este proyecto es Ana I. López quien[,] además[,] es dueña de la propiedad. Para demostrar legitimación activa se presentó Contrato de Arrendamiento, cuyo arrendatario e[s] Ministerio Señal de Vida. La proponente radica la solicitud incluyendo "parte arrendatario" Ministerio Señal de Vida.

4. La solicitud es de Vista Pública y OGPe citó el caso para vista pública el 13 de noviembre de 2024, a la[s] 9:30 de la mañana a través de la aplicación Microsoft Teams 365.

5. El aviso de vista fue publicado en el Periódico Primera Hora del 24 de octubre de 2024, lo que fue enviado con el recorte y el affidavit del periódico. Hay un rótulo en la propiedad anunciando la vista pública y las fotos forman

---

[14] SUMAC TA, a la Entrada Núm. 11, Expediente Administrativo.
[15] *Íd.*
[16] *Íd.*

parte del expediente administrativo. Además, los colindantes del proyecto fueron notificados por correo certificado con acuse de recibo.

6. El local objeto de esta evaluación es una estructura de una planta con un área designada a los servicios religiosos, un área de oficina, cocina y tres salones para lo que será la escuela. Se presenta croquis con el área de cabida correcta que es de 600 pies cuadrados. Cuenta con servicio de agua, energía eléctrica, internet, recogido de basura, aire acondicionado y las calles están asfaltadas.

7. Al posterior de este proyecto hay residencias, a la derecha residencias, frente a la propiedad local comercial y a la izquierda un local comercial.

8. Llevan 11 años en este local y esperan tener 10 estudiantes. No hay quejas o querellas de vecinos.

9. En el expediente obra autorización para utilizar el estacionamiento del Restaurante Casa Jiba. En el mismo pueden estacionar hasta veinticinco (25) vehículos. El estacionamiento se encuentra a unos cincuenta (50) metros de distancia de las facilidades.

10. Solicitó una Exclusión Categórica ya que el edificio está construido. No propone ampliaciones, ni remodelaciones que requieran de un permiso de construcción.

11. De otra parte, las inspecciones de salud y seguridad resultaron adecuadas. Así también, el Municipio de Orocovis endosa el proyecto mediante carta del 7 de mayo de 2024.[17]

En la *Resolución*, la OGPe concluyó que, luego de evaluar la solicitud de Permiso Único mediante vista pública, la determinación era una favorable, por lo que se concedió el antedicho permiso para la operación de una Institución Educativa en una pertenencia ubicada en la Carretera 155 Km. 31.5, Bloque H-1 del Barrio Orocovis en el Municipio de Orocovis.[18]

En desacuerdo, el 3 de septiembre de 2025, la señora Burgos Ortiz interpuso una *Moción de Reconsideración.*[19] En respuesta, el 15 de septiembre de 2025, la OGPe emitió y notificó su determinación sobre no acoger el recurso de revisión administrativa.[20] Al día siguiente, el 16 de septiembre de 2025,

---

[17] SUMAC TA, a la Entrada Núm. 11, Expediente Administrativo.
[18] *Íd.*
[19] *Íd.*
[20] *Íd.*

notificada el día 17, del mismo mes y año, la OGPe emitió *Resolución Nunc Pro Tunc,* para corregir el nombre de la recurrente en la antedicha resolución.[21]

Insatisfecha aun, el 11 de octubre de 2025, la señora Burgos Ortiz incoó un recurso de *revisión* ante nos en el cual esgrimió los siguientes tres (3) señalamientos de error:

1. La facilidad donde se propone el uso de iglesia/escuela vía excepción está localizada a una distancia menor de cien (100) metros de un negocio (Farmacia Minelly), que previo al uso existente (iglesia) y propuesto solicitado (escuela) por la parte recurrida, ya estaba autorizado y al presente está autorizado mediante un Permiso Único, para la venta al detal de bebidas alcohólica[s] y cigarrillos (Reglamento Conjunto, Sección 4.4.1.6)

2. El uso propuesto vía excepción (escuela) no es compatible con las características de una zona escolar debido a la naturaleza de la actividad comercial que al presente ocurre en el área (Reglamento Conjunto, Regla 7.4.4), y;

3. El uso propuesto y existente de la iglesia/escuela no cumple con el requisito sobre espacios de estacionamiento (Reglamento Conjunto, Regla 8.5.1.1)

En esa misma fecha, compareció la recurrente para acreditar haber notificado a las partes y a la OGPe copia del recurso incoado. Por otro lado, mediante *Resolución,* emitida el 15 de octubre de 2025, en lo atinente, concedimos hasta el 22 de octubre de 2025 a la OGPe para presentar copia certificada del expediente administrativo, Caso Núm. 2021-408994-PU-317369. Además, concedimos a la parte recurrida hasta el 10 de noviembre de 2025, para presentar su alegato en oposición.

El 24 de octubre de 2025, compareció la OGPe para presentar la copia certificada del expediente administrativo. Por otro lado, el 10 de noviembre de 2025, compareció la parte recurrida mediante *Alegato en oposición de la Oficina de Gerencia de Permisos al recurso de revisión judicial al Honorable Tribunal de Apelaciones.* Con el beneficio de la comparecencia de las partes, procederemos a disponer del recurso instado.

---

[21] SUMAC TA, a la Entrada Núm. 11, Expediente Administrativo.

II

**A. La Revisión Judicial**

El Tribunal Supremo de Puerto Rico ha sostenido que el derecho a cuestionar la determinación de una agencia, mediante revisión judicial, es parte del debido proceso de ley protegido por la Constitución de Puerto Rico.[22] El Artículo 4.006 (c) de la Ley de la Judicatura del Estado Libre Asociado de Puerto Rico[23] otorga competencia apelativa al Tribunal de Apelaciones para revisar las decisiones, órdenes y resoluciones finales de las agencias administrativas.[24] La revisión judicial de las decisiones administrativas tiene como fin delimitar la discreción de los organismos administrativos, para asegurar que ejerzan sus funciones conforme a la ley y de forma razonable.[25] Esta doctrina dispone que corresponde a los tribunales examinar si las decisiones de las agencias administrativas fueron tomadas dentro de los poderes delegados, y si son compatibles con la política pública que las origina.[26]

A esos efectos, la revisión judicial comprende tres (3) aspectos: (i) la concesión del remedio apropiado; (ii) la revisión de las determinaciones de hecho conforme al criterio de evidencia sustancial, y (iii) la revisión completa y absoluta de las conclusiones de derecho.[27] Nuestro Alto Foro ha establecido que el derecho a una notificación adecuada concede a las partes la oportunidad de tomar conocimiento real de la acción tomada por la agencia. Además, otorga a las personas, cuyos derechos pudieran quedar afectados,

---

[22] *Asoc. Condómines v. Meadow Dev.*, 190DPR 843, 847 (2014); *Picorelli López v. Depto. de Hacienda*, 179 DPR 720, 736 (2010).
[23] Ley Núm. 201-2003, 4 LPRA sec. 24y(c).
[24] *Asoc. Condómines v. Meadows Dev.,* supra, a la pág. 847.
[25] *Empresas Ferrer v. ARPe,* 172 DPR 254, 264 (2007).
[26] *Rolón Martínez v. Supte. Policía,* 201 DPR 26, 35 (2018).
[27] *Batista, Nobbe v. Jta. Directores*, 185 DPR 206, 217 (2012), citando a *Asoc. Fcias. V. Caribe Specailty et al. II,* 179 DPR 923, 940 (2010); *Mun. de San Juan v. JCA,* 149 DPR 263, 279-280 (1999).

la oportunidad para decidir si ejercen los remedios que la ley les reserva para impugnar la determinación.[28]

Es norma sabida que los tribunales apelativos, al ejercer su función revisora, deben conceder una gran deferencia a las decisiones emitidas por las agencias, debido a la vasta experiencia y conocimiento especializado en los asuntos que les han sido encomendados.[29] Igualmente, el Alto Foro ha enfatizado que los tribunales, aplicando el criterio de razonabilidad y deferencia, no deben alterar las determinaciones de las agencias.[30] En mérito de lo anterior, los tribunales deben ser cautelosos al intervenir con las conclusiones e interpretaciones de los organismos administrativos especializados.[31] Ahora bien, lo anterior únicamente surtirá efecto si la decisión se basa en evidencia sustancial que obra en el expediente administrativo.[32] En cuanto a la evidencia sustancial, se ha definido como "aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión".[33] Dicho análisis requiere que la evidencia sea considerada en su totalidad, esto es, tanto aquella que sostenga la decisión administrativa como la que menoscabe el peso que la agencia le haya conferido.[34] Ello, implica que, de existir un conflicto razonable en la prueba, debe respetarse la apreciación de la agencia.[35] Además, la norma de prueba sustancial se sostiene en la premisa de que son las agencias las que producen y determinan los hechos en los procesos administrativos, y no los tribunales.[36]

---

[28] *Asoc. Vec. Altamesa Este v. Mun. de San Juan,* 140 DPR 24, 34 (1996).
[29] *Rolón Martínez v. Supte. Policía,* supra, a la pág. 35.
[30] *Íd.*
[31] *García Reyes v. Cruz Auto Corp.*, 173 DPR 870, 892 (2008).
[32] *Otero v. Toyota*, 163 DPR 716, 727 (2005).
[33] *Batista, Nobbe v. Jta. Directores,* supra, a la pág. 216; *Otero v. Toyota,* supra, a la pág. 728.
[34] *Assoc. Ins. Agencies, Inc. v. Com. Seg. PR,* 144 DPR 425, 437 (1997).
[35] *Hilton v. Junta de Salario Mínimo*, 74 DPR 670, 687 (1953).
[36] Fernández Quiñones, *Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme*, 3ra ed., Colombia, Ed. Forum, 2013.

Debido a la presunción de regularidad y corrección de los procedimientos y las decisiones de las agencias administrativas, quien alegue ausencia de evidencia sustancial tendrá que presentar prueba suficiente para derrotar esta presunción, no pudiendo descansar en meras alegaciones.[37] Para ello, deberá demostrar que existe otra prueba en el expediente que reduzca o menoscabe el valor probatorio de la evidencia impugnada, hasta el punto de que no se pueda concluir que la determinación de la agencia fue razonable de acuerdo con la totalidad de la prueba que tuvo ante su consideración.[38] Si la parte afectada no demuestra la existencia de otra prueba que sostenga que la actuación de la agencia no está basada en evidencia sustancial o que reduzca o menoscabe el valor de la evidencia impugnada, el Tribunal respetará las determinaciones de hecho, y no sustituirá el criterio de la agencia por el suyo.[39] En cambio, las conclusiones de derecho son revisables en todos sus aspectos.[40] Lo anterior fue reiterado por nuestro Tribunal Supremo cuando expresó que "al enfrentarse a un recurso de revisión judicial proveniente de una agencia administrativa será el deber de los tribunales revisar las conclusiones de derecho en todos sus aspectos."[41]

Establecido lo anterior, es de ver que los foros apelativos deberán intervenir con las decisiones de las agencias administrativas cuando: (i) la decisión no esté basada en evidencia sustancial; (ii) la agencia haya errado en la aplicación de la ley; (iii) su actuación resulte ser arbitraria, irrazonable o ilegal, o (iv) la actuación administrativa lesiona derechos constitucionales

---

[37] *OEG v. Martínez Giraud*, 210 DPR 79, 89 (2022); *Graciani Rodríguez v. Garage Isla Verde*, 202 DPR 117, 128 (2019); *González Segarra et al. v. CFSE*, 188 DPR 252, 277 (2013); *Pacheco v. Estancias*, 160 DPR 409, 431 (2003).
[38] *Gutiérrez Vázquez v. Hernández y otros*, 172 DPR 232, 244 (2007).
[39] *Otero v. Toyota*, supra, a la pág. 728.
[40] *García Reyes v. Cruz Auto Corp.*, supra, a la pág. 894.
[41] *Vázquez et al. v. DACo*, 2025 TSPR 56, 215 DPR___ (2025).

fundamentales.[42] Entiéndase que, aunque los tribunales están llamados a conceder cierta deferencia a las decisiones administrativas, tal norma no es absoluta. Ello, puesto a que no puede imprimírsele un sello de corrección automático, bajo el pretexto de deferencia, a determinaciones o interpretaciones administrativas que son irrazonables, ilegales o contrarias a derecho.[43]

### B. Las Variaciones de Uso en los Distritos R-I- Residenciales Intermedios

Los Distritos R-I- Residencial intermedio son unos de densidad poblacional intermedia, los cuales se establece para identificar áreas residenciales desarrolladas o que puedan desarrollarse, y en los cuales pueden permitirse diferentes tipos de vivienda.[44] Los usos que se permitirán en este distrito deben ser compatibles con los propósitos del mismo.[45] Para facilitar esta labor, el Reglamento Conjunto propone una tabla de posibles usos, tanto residenciales como de servicios, así como una lista de usos permitidos por vía de excepción.[46] Por consiguiente, quien interese solicitar a la Oficina de Gerencia de Permisos (OGPe) un uso distinto a los propuestos, para una propiedad ubicada en un Distrito R-I, el permiso no podrá concederse ministerialmente, por lo que la solicitud de uso pasará a ser una de carácter discrecional. Una solicitud de tal clase se conoce como una variación de uso.

Conforme a la Ley para la Reforma del Proceso de Permisos de Puerto Rico (Ley Núm. 161), las variaciones de uso son "toda autorización para utilizar una propiedad para un uso que no satisfaga las restricciones impuestas a una zona o distrito [. . .]".[47]

---

[42] *The Sembler Co. v. Mun. de Carolina,* 185 DPR 800, 822 (2012), citando a *Empresas Ferrer v. ARPe*, supra, a la pág. 264.
[43] *Voilí Voilá Corp. et al. v. Mun. Guaynabo*, 213 DPR 743 (2024).
[44] Sección 6.1.3.1 del Reglamento Núm. 9473, *supra.*
[45] *Íd.,* Sección 6.1.3.2.
[46] *Íd.,* Tabla 6.32 y Sección 6.1.3.3.
[47] Artículo 1.5 (95) de la Ley Núm. 161-2019, 23 LPRA sec. 9011.

Estas solo se podrán conceder por vía de excepción y por razón de circunstancias extraordinarias.[48] Es decir, "[e]sta variación se concede por la necesidad reconocida o apremiante de algún uso por la comunidad donde ubica la propiedad, debido a las circunstancias particulares de dicha comunidad que no puede ser satisfecha si no se concede tal variación o que se concede para satisfacer una necesidad pública de carácter inaplazable".[49]

Por lo anteriormente expuesto, es la razón por la cual las variaciones para el uso de una propiedad que se distancia de los propósitos de un distrito o zona solo pueden concederse de manera discrecional. Esto, puesto a que una determinación discrecional "conlleva juicio subjetivo por parte de la Junta Adjudicativa, del Secretario Auxiliar o un Municipio Autónomo con Jerarquía de la I a la V sobre la forma en que se conduce o propone una actividad o acción".[50] Entiéndase que, "[e]stos utilizan su conocimiento especializado, discreción y juicio para llegar a su determinación, ya que esta determinación considera otros asuntos además del uso de estándares fijos o medidas objetivas".[51] Además, será necesario que, en todas las solicitudes discrecionales, se tome la determinación final considerando la totalidad del expediente.[52] Por lo anterior, es indispensable que la determinación final de una solicitud discrecional se emita por escrito y contenga, separadamente, las determinaciones de hecho y conclusiones de derecho que fundamentan la determinación.[53]

### C. El Reglamento Conjunto

El Reglamento Conjunto se promulgó en virtud de la Ley Núm. 161, a los fines de velar por los recursos naturales, así como para

---

[48] Artículo 1.5 (95) de la Ley Núm. 161, *supra.*
[49] *Íd.*
[50] *Íd.*, Artículo 1.5 (26).
[51] *Íd.*
[52] Regla 2.2.2 del Reglamento 9473, *supra.*
[53] Artículo 8.7 de la Ley Núm. 161, *supra,* 23 LPRA sec. 9018f.

promover un desarrollo planificado y sostenible en la industria de la construcción, el cual, a su vez, estimule la economía.[54] En lo pertinente al caso de marras, la Sección 4.4.1.6 del referido reglamento dispone que no se podrán expedir licencias nuevas a negocios que interesen traficar al detalle bebidas alcohólicas a locales situados a cien (100) metros de una escuela pública o privada.[55] No obstante, lo anterior, si la escuela consciente a dicha licencia, se podrá otorgar la misma.[56]

Por otra parte, "[l]as escuelas deberán ser ubicadas en zonas escolares existentes o en lugares donde el carácter del sector, así como las actividades, negocios, usos de terrenos[,] condiciones de tránsito u otras características del área donde se propone ubicar una instalación docente sean compatibles con las características de una zona escolar y el ambiente necesario para la gestión educativa".[57] De manera que, "[n]o se permitirá la ubicación de nuevas escuelas en lugares donde existan o estén autorizados usos considerados como nocivos o no-compatibles con las labores escolares".[58] Particularmente, se deberá dar estricto cumplimiento a estas disposiciones cuando las instituciones docentes sean de nivel preescolar, primario, secundario, superior en distritos de calificación residenciales.[59]

Respecto a las áreas de estacionamiento de vehículo de motor, el Reglamento Conjunto requiere que sean provistas dentro de la pertenencia, "bien sea el edificio principal, en un edificio accesorio o en un área remanente del solar que está ubicado o ubicara en dicho edificio principal".[60] Sin embargo el aludido reglamento, igualmente, permite que se autorice "la provisión de tal área de

---

[54] Certificación del Gobernador del Reglamento Núm. 9473, *supra.*
[55] Sección 4.4.1.6 (a) del Reglamento 9473, *supra.*
[56] *Íd.,* 4.4.1.6 (c)
[57] *Íd.,* 7.4.4. (a)
[58] *Íd.,* 7.4.4. (b)
[59] *Íd.,* 7.4.4. (c)
[60] Sección 8.5.1.1 (a) del Reglamento 9473, *supra.*

estacionamiento en otro predio localizado a un distancia de fácil recorrido a pie de no más de una distancia de doscientos (200) metros del solar [. . .]".[61] Ahora bien, se debe hacer constar la dedicación de la totalidad del predio para área de estacionamiento mediante el documento legal correspondiente.[62]

### III

En el presente caso, la recurrente nos convida a concluir que la OGPe incidió al emitir la *Resolución* que nos ocupa. A través de esta *Resolución*, la aludida agencia concedió un Permiso Único para operar una Institución Educativa en una pertenencia ubicada en un Distrito-R-I del Municipio de Orocovis. En su recurso, la recurrente plantea que la facilidad que se propuso para utilizar como escuela está localizada a una distancia menor de cien (100) metros de un negocio que está autorizado para la venta al detal de bebidas alcohólicas y cigarrillos, por lo que, a su juicio, el área en la cual ubica la referida pertenencia no es compatible con las características de una zona escolar, dado a la actividad comercial que al presente ocurre en el área. Por otra parte, arguye que el uso propuesto no cumple con el requisito de espacios de estacionamientos de la Regla 8.5.1.1 del Reglamento Conjunto.[63]

Según relatamos previamente, el caso del título tuvo sus inicios cuando se presentó ante la OGPe una Solicitud de Enmienda de Permiso Único para añadir una escuela a una iglesia ya existente en una pertenencia ubicada en un Distrito R-I. Conforme al Expediente Administrativo ante nuestra consideración, la referida Institución Educativa ofrecería los grados de Kinder a Primero, con una matrícula limitada de diez (10) estudiantes por grupo.[64] Por otra parte, según se explicó en el *Memorial Explicativo*, el Ministerio Señal

---

[61] Sección 8.5.1.1 (c) del Reglamento 9473, *supra*.
[62] *Íd.*
[63] *Íd.*
[64] SUMAC TA, a la Entrada Núm. 11, Expediente Administrativo.

de Vida proyectaba que esta Institución Educativa no durara más de dos (2) años, ya que, culminado este periodo, se esperaba que se pudiera movilizar a unas facilidades en el Barrio Barros de Orocovis.[65]

Evaluada la solicitud, la OGPe remitió una comunicación a la parte solicitante en la cual le explicó que el uso solicitado no estaba permitido ministerialmente, por lo cual debía ser aprobado de manera discrecional, así como que sería necesario la celebración de una vista pública y dar cumplimiento a ciertas exigencias requeridas por el Reglamento Conjunto.

Cumplidas las aludidas exigencias, se procedió a celebrar la vista pública. Así, pues, la OGPe procedió a autorizar el uso solicitado mediante el dictamen recurrido. Tras varios trámites procesales, innecesarios de pormenorizar, el referido dictamen fue notificado apropiadamente a las partes correspondientes.

Establecido lo anterior, conviene mencionar que, en la tarea de revisar una decisión administrativa, debemos abstenernos de concluir irreflexivamente que las determinaciones e interpretaciones hechas por las agencias son correctas.[66] Para prevenir el referido automatismo, debemos de evaluar si la decisión se basa en evidencia sustancial que obra en el expediente administrativo.[67] A esos efectos, la parte recurrente deberá demostrar, mediante su recurso de revisión judicial, que existe otra prueba en el expediente que impida concluir que la determinación de la agencia fue razonable, de acuerdo con la totalidad de la prueba que tuvo ante su consideración.[68] En consecuencia, si la parte afectada no demuestra lo anterior, estaremos impedidos de sustituir el criterio de la agencia.[69]

---

[65] SUMAC TA, a la Entrada Núm. 11, Expediente Administrativo.
[66] *Voilí Voilá Corp. et al. v. Mun. Guaynabo,* supra, a la pág. 754.
[67] *Otero v. Toyota*, supra, a la pág. 727.
[68] *Gutiérrez Vázquez v. Hernández y otros*, supra, a la pág. 244.
[69] *Otero v. Toyota*, supra, a la pág. 728.

Con el estándar antes esbozado en mente, procedemos a evaluar la procedencia de los errores esgrimidos por la recurrente. Por estar íntimamente relacionados, discutiremos el *primer* y el *segundo* error en conjunto, mientras que el *tercer* error lo discutiremos por separado.

En su *primer* y *segundo* señalamiento de error, la recurrente arguye que la Sección 4.4.1.6 del Reglamento Conjunto establece una prohibición de que existan escuelas localizadas a menos de cien (100) metros de negocios que trafiquen al detalle bebidas alcohólicas.[70] En cuanto a este particular, resalta que existe una farmacia, con licencia para venta de bebidas alcohólicas, a menos de sesenta (60) metros de distancia de la pertenencia que se pretende usar como escuela. Asimismo, destaca que el Reglamento Conjunto exige que las instalaciones docentes se ubiquen en un área que sea compatible con las características de una zona escolar y con el ambiente necesario para la gestión educativa. A tenor, plantea que la venta al detal de bebidas alcohólicas es considerada un uso nocivo e incompatible las labores escolares. Conviene mencionar que la referida farmacia es propiedad de la recurrente.

Por otra parte, subraya que el predio en el cual se propone operar la escuela está calificado como un Distrito R-1 y que, de una lectura de las secciones pertinentes del Reglamento Conjunto, surge que las escuelas y facilidades docentes no están permitidas dentro de esta zona, ya sea de forma ministerial o discrecional. En mérito de todo lo antes expuesto, arguye que la enmienda solicitada, a los fines de operar una Institución Educativa, no debió haber sido autorizada.

Esbozado lo anterior, puntualizamos de entrada que, aunque es de ver que, la venta de bebidas alcohólicas no es compatible con

---

[70] Reglamento Núm. 9473, *supra.*

las labores escolares, se desprende diáfanamente que la Sección 4.4.1.6 del Reglamento Conjunto no prohíbe que existan escuelas localizadas a menos de cien (100) metros de negocios que trafiquen al detalle bebidas alcohólicas, sino, más bien, que se expidan licencias nuevas a locales que estén situados a esa distancia.[71] Incluso, el Reglamento Conjunto concede la facultad de autorizar la referida licencia si la escuela consiente a la misma.[72]

Por otro lado, no compartimos la postura de la recurrente en cuanto a que la operación de escuelas o instituciones educativas no están permitidas en las zonas calificadas como Distrito R-I. Conforme expusimos en nuestra exposición doctrinal previa, los Distritos R-I son áreas residenciales desarrolladas, o que pueden desarrollarse, y en los cuales pueden permitirse diferentes tipos de viviendas.[73] El Reglamento Conjunto deja claro que los usos que se permitirán en este tipo de distrito deben ser compatibles con los propósitos del mismo.[74] Por eso, este Reglamento provee una tabla de usos permitidos, tanto residenciales como de servicios, así como una lista de usos por vía de excepción.[75] Pese a que las instituciones educativas no se encuentran tal cual mencionadas entre los usos permitidos, ni en aquellos por vía de excepción, que propone el reglamento, sí se encuentran las instituciones religiosas.[76] Recordamos que el permiso que nos ocupa es producto de una Solicitud de Enmienda para operar una escuela en un Iglesia ya existente.

Respecto a las instituciones religiosas en este tipo de distrito, el Reglamento Conjunto dispone que "[s]e podrá permitir la construcción de otros edificios para usos relacionados en el mismo

---

[71] Reglamento Núm. 9473, *supra.*
[72] *Íd.,* Sección 7.4.4. (b).
[73] *Íd.,* Sección 6.1.3.1.
[74] *Íd.,* Sección 6.1.3.2.
[75] *Íd.,* Tabla 6.32 y Sección 6.1.3.3.
[76] *Íd., Sección* 6.1.3.3 (e).

predio, tales como la residencia del ministro o párroco, incluyendo ***edificios docentes***, siempre que se presente un concepto del desarrollo de los terrenos y se cumpla con los requisitos sobre tamaño mínimo de área solar [. . .]".[77] En vista de lo anterior, colegimos que, aunque las escuelas no se mencionan de forma literal entre los usos permitidos en los Distritos R-I, el Reglamento Conjunto contempla que puedan coexistir con los tipos de usos permitidos en este tipo de distrito.

De otra parte, precisa señalar que, los usos señalados en el Reglamento Conjunto para este tipo de distritos son aquellos que pueden ser autorizados de forma ministerial. Nada impide que, tal como procedió la agencia recurrida, apruebe una variación de uso de manera discrecional, la cual es una "autorización para utilizar una propiedad para un uso que ***no satisfaga las restricciones impuestas a una zona*** o distrito [. . .]".[78] Esto permitirá que se consideren otros asuntos, aparte de los estándares fijos o medidas objetivas.

Por otro lado, precisa señalar que, de una revisión minuciosa del expediente administrativo, no surge que existan en el distrito consideraciones que hagan el área incompatible con las características de zona escolar o que la escuela propuesta sea incompatible con los propósitos del distrito. Más aún cuando, según adelantamos, esta no pretende operar por un término mayor de dos (2) años y cuenta con una matrícula de unos veinte (20) estudiantes. De otra parte, es menester resaltar, aunque la recurrente acompañó su recurso con un presunto correo electrónico que le remitió a la OGPe, en el cual señaló las cuestiones que hacían, a su juicio, el distrito inadecuado para que operara una institución educativa, del expediente administrativo no surge que este haya formado parte de

---

[77] Sección 6.1.3.3 (e) del Reglamento Núm. 9473, *supra*. (Énfasis suplido).
[78] Artículo 1.5 (95) de la Ley Núm. 161, *supra*. (Énfasis suplido).

los trámites administrativos que estuvieron ante la consideración de la referida agencia en la gestión de aprobar la variación de uso que aquí nos ocupa. Según ya expresamos, quien señale que una agencia administrativa erró en su determinación, deberá demostrar que existe otra prueba en el expediente que impida concluir que lo determinado fue irrazonable, cosa que en este caso no ocurrió.[79]

Finalmente, respecto al *tercer* error esgrimido por la aquí recurrente, puntualizamos que esta plantea que la pertinencia que se propuso para operar la Institución Educativa en cuestión no cumple con el requisito de espacios de estacionamientos, puesto que no tiene la capacidad o el espacio para los vehículos que acceden a la facilidad. De otra parte, arguye que, aunque en la vista la parte recurrida expresó que el restaurante Casa Jiba autorizó el uso de su estacionamiento, no se confirmó la existencia de un documento legal que indique que dicho predio se dedicará en su totalidad para el área de estacionamiento. Asimismo, expresa la recurrente que, dado a que el referido restaurante es un negocio que vende bebidas alcohólicas, permitir el estacionamiento dentro de los predios del negocio para el uso de la escuela ubicaría la misma a una distancia menor de cien (100) metros, lo cual está prohibido por el Reglamento Conjunto.

Aunque es cierto que la pertenencia en cuestión no cuenta con espacio de estacionamiento, conforme subrayamos anteriormente, el Reglamento Conjunto permite que se autorice que este espacio sea en otro predio localizado a una distancia de fácil recorrido a pie de no más de una distancia de doscientos (200) metros del solar.[80] Distinto a lo planteado por la aquí recurrente, en el expediente administrativo consta un documento mediante el cual se autoriza a usar el estacionamiento del restaurante Casa Jiba para

---

[79] *Gutiérrez Vázquez v. Hernández y otros*, supra, a la pág. 244.
[80] Sección 8.5.1.1 (c) del Reglamento 9473, *supra*.

estacionar los vehículos que correspondan a la Institución Educativa en cuestión. Por otro lado, de las determinaciones de hecho de la *Resolución* aquí recurrida, surge que en dicho estacionamiento se pueden estacionar hasta veinticinco (25) vehículos y que el mismo se encuentra a unos cincuenta (50) metros de distancia de la escuela.[81] Conviene mencionar que, según ya hemos puntualizado, la referida Institución Educativa no espera tener más de veinte (20) estudiantes. Puntualizamos, además, que la recurrente no mostró otra prueba en el expediente que controvierta el documento autorizando el estacionamiento o las determinaciones de hecho esgrimidas por la agencia. De manera que entendemos que, en este caso, se cumple con las exigencias respecto al área de estacionamiento dispuestas en el Reglamento Conjunto.

En cuanto a los argumentos relacionados a la venta de bebidas alcohólicas, ya esta cuestión fue atendida previamente. Según adelantamos, el Reglamento no prohíbe que una escuela ubique a una distancia menor de cien (100) metros de un comercio que venda bebidas alcohólicas. Solo prohíbe la concesión de nuevas licencias para negocios que se encuentren a esta distancia.

Por todo lo antes expuesto, concluimos que los errores esgrimidos por la recurrente no se cometieron. De manera que procede que confirmemos la *Resolución* aquí recurrida.

IV

Por los fundamentos que anteceden, se *confirma* la *Resolución* recurrida.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[81] SUMAC TA, a la Entrada Núm. 11, Expediente Administrativo.